EOD

12/13/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CORNERSTONE PRODUCTS, INC., | § | Case No. 05-43533 |
| | § | (Chapter 11) |
| Debtor. | § | |
| ─────────────────────────────── | § | |
| CORNERSTONE PRODUCTS, INC., | § | |
| and SUNDANCE GENERAL, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adv. Proc. No. 05-4217 |
| | § | |
| PILOT PLASTICS, INC., BLOOM | § | |
| INDUSTRIES, INC., CHAMPION | § | |
| MOLDED PLASTICS, EDGE PLASTICS, | § | |
| INC., FIRST UNITED BANK & TRUST | § | |
| COMPANY and RURAL ENTERPRISES | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER[1]**

Cornerstone Products, Inc. ("Cornerstone") initiated this adversary proceeding on October 21, 2005, by filing a "Complaint to Determine Validity and Priority of Alleged Liens and for Turnover" (the "Complaint"). The Court entered an order adding Sundance General, LLC ("Sundance," together with Cornerstone, the "Plaintiffs") as an additional plaintiff on November 16, 2006. This matter is before the Court on (1) the "Motion for Summary Judgment" [Dkt. No. 93] filed by Edge Plastics, Inc. ("Edge") on October 17, 2006 (the "Edge Motion"); (2) the "Motion for Partial Summary Judgment as to Pilot

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, or the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

Plastics, Inc. and Edge Plastics, Inc." [Dkt. No. 95] filed by Cornerstone on October 19, 2006 (the "Plaintiffs' Motion"); (3) the "Motion and Supporting Brief for Summary Judgment against Cornerstone Products, Inc., First United Bank & Trust Company, and Rural Enterprises, Inc." [Dkt. No. 96] filed by Pilot Plastics, Inc. ("Pilot"), as a defendant and counterclaimant, on October 19, 2006 (the "Pilot Motion"); and (4) the "Motion (I) For Relief From Order Denying Motion for Leave to Amend Its Answer to Plaintiff's Second Amended Complaint, (II) for Leave to Amend Its Answer to Plaintiff's Second Amended Complaint, and (III) to Continue Trial" [Dkt. No. 148] filed by Edge on December 8, 2006 (the "Reconsideration Motion").

## I. SUMMARY JUDGMENT STANDARDS

Motions for summary judgment are authorized by Rule 56 of the Federal Rules of Civil Procedure, as adopted and applied to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. The entry of a summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citing FED. R. CIV. P. 56(e)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *Celotex*, 477 U.S. at 323. If the burden of

persuasion at trial must be borne by the non-moving party, the party moving for summary judgment may satisfy the burden of production under Rule 56 by either (1) submitting affirmative evidence that negates an essential element of the non-moving party's claim, or (2) demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Celotex*, 477 U.S. at 331; *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). The party opposing the motion must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-249.

In this case, the proper summary judgment evidence submitted by the parties produces the following body of relevant, uncontested facts:

## II. UNCONTESTED FACTS

### A. Relevant Procedural History

1.  Cornerstone filed a bankruptcy petition on July 5, 2005.

2.  The bankruptcy schedules filed by Cornerstone list a claim for Edge in the amount of $574,030.57 and a claim for Pilot in the amount of $684,415. These claims are listed as disputed as to both secured status and amount.

3. On January 9, 2006, Cornerstone filed its "Second Amended Plan" (the "Plan") and "Second Amended Disclosure Statement."

4. On February 16, 2006, the Court entered an "Order Confirming Second Amended Plan of Liquidation for Cornerstone Products, Inc. as Modified" (the "Confirmation Order").

5. Sections 10.01 and 10.02 of the Plan set forth the conditions under which certain causes of action belonging to Cornerstone are to be pursued by the Trust (as defined in and established by the Plan) and "Sullivan Liquidations." The Plan defines "Sullivan Liquidations" at section 1.68, in relevant part, as "the company to be formed by Reggie Sullivan to fund the pursuit of the Specified Causes of Action …." The Plan defines "Specified Causes of Action" at section 1.65, in relevant part, as "the Causes of Action by the Debtor or the Estate against any Contract Molder or Resin Supplier of the Debtor [.]"

6. On February 23, 2006, Cornerstone amended its Complaint to add a claim for the avoidance and recovery of preferential transfers against Edge under 11 U.S.C. §547(b). In its answer to Cornerstone's First Amended Complaint, Edge asserted the affirmative defenses of unclean hands, breach of contract, waiver and estoppel, and Edge asserted that it held a valid, senior possessory lien.

7. Cornerstone amended its Complaint again on May 1, 2006. In its answer to Cornerstone's Second Amended Complaint, Edge again asserted the affirmative defenses of unclean hands, breach of contract, waiver and estoppel, and Edge asserted that it held a valid, senior possessory lien.

8.  In the Edge Motion, which was filed on October 17, 2006, Edge asserted a new defense to the claim for avoidance and recovery of preferential transfers – namely, the contemporaneous exchange for new value defense under 11 U.S.C. §547(c)(1). On October 31, 2006, Edge filed a "Motion for Leave to Amend its Answer" [Dkt. No. 103] to include the contemporaneous exchange for new value defense. The Court denied Edge's motion following a hearing on November 28, 2006.

9.  On November 30, 2006, the Court entered an "Order Denying Motion of Defendant Edge Plastics, Inc. for Leave to Amend Its Answer to Plaintiff's Second Amended Complaint" [Dkt. No. 129].

10. Edge filed the Reconsideration Motion on December 8, 2006 pursuant to Federal Rule of Civil Procedure 60(b), as adopted and applied to this adversary proceeding by Federal Rule of Bankruptcy Procedure 9024. Among other things, Edge re-urges its request for leave to amend its answer to Cornerstone's Second Amended Complaint in order to add the contemporaneous exchange for new value defense under 11 U.S.C. §547(c)(1).

## B. Relevant Factual Background

11. Prior to bankruptcy, Cornerstone was in the business of designing, manufacturing and marketing plastic container products, including indoor and outdoor waste containers, storage totes and bins, laundry baskets and hampers, and commercial trash cans. In 2004, Cornerstone began outsourcing a portion of its business with outside contract molding partners. Edge and Pilot are among the molders who entered into manufacturing agreements with Cornerstone.

MEMORANDUM OPINION AND ORDER –Page 5

12. With respect to Pilot, Cornerstone supplied its molds and resins to Pilot, who manufactured products for Cornerstone at its facility in Ohio. On August 10, 2004, Cornerstone executed with Pilot (1) an "Agreement to Manufacture, Warehouse and Ship Products for Cornerstone Products, Inc."; (2) a "Bailment Agreement"; and (3) a "Lien Waiver and Acknowledgment in favor of Fleet Capital Corporation." The Bailment Agreement with Pilot provides in pertinent part:

● The Molding Equipment is, and will at all times remain and be deemed to be, the sole and exclusive personal property of Cornerstone.

● Pilot shall have no right, title or interest in the Molding Equipment, except as expressly set forth in this Agreement.

● Pilot shall keep the Molding Equipment free and clear of all liens claims and encumberances.

13. With respect to Edge, Cornerstone supplied its molds and resins to Edge, who manufactured products for Cornerstone at its facility in Ohio. Cornerstone agreed to pay Edge for the products it manufactured and produced for Cornerstone. Additionally, in August 2004, Cornerstone and Edge executed a Bailment Agreement. The Bailment Agreement with Edge provides in pertinent part:

● The Molding Equipment is, and will at all times remain and be deemed to be, the sole and exclusive personal property of Cornerstone.

● Edge shall have no right, title or interest in the Molding Equipment, except as expressly set forth in this Agreement.

● Edge shall keep the Molding Equipment free and clear of all liens claims and encumberances.

14. At some point in 2004, prior to Cornerstone's bankruptcy, Cornerstone stopped paying all of the invoices submitted to it by Edge and Pilot for products manufactured and shipped to Cornerstone.

**MEMORANDUM OPINION AND ORDER –Page 6**

15. On or about February 1, 2005, Edge gave Cornerstone final notice of amounts due and owing to it pursuant to Ohio Revised Code §1333.31(B)(1). Edge subsequently initiated a lawsuit against Cornerstone in the Court of Common Pleas, Richland County, Ohio, seeking to foreclose on and sell Cornerstone's molds pursuant to Ohio Revised Code §1333.31.

16. Pilot likewise gave Cornerstone final notice of amounts due and owing to Pilot pursuant to Ohio Revised Code §1333.31(B)(1). Prior to Cornerstone's bankruptcy, on April 25, 2005, Pilot brought suit against Cornerstone in the Court of Common Pleas, Summit County, Ohio, seeking to foreclose on and sell Cornerstone's molds pursuant to Ohio Revised Code §1333.31.

17. On or about August 31, 2005, Pilot filed a proof of claim in Cornerstone's bankruptcy asserting a secured claim in the amount of "$762,443.64+". Pilot asserted that its claim is secured by "molds, forms, etc."

18. On or about October 31, 2005, Edge filed a proof of claim in Cornerstone's bankruptcy asserting a secured claim in the amount of "$669,147+". Pilot asserted that its claim is secured by "molds."

19. On October 20, 2005, Cornerstone demanded that Pilot and Edge return the equipment and property provided by Cornerstone pursuant to the Bailment Agreements.

### III. LEGAL DISCUSSION

Cornerstone seeks a partial summary judgment on Count One of its Second Amended Complaint. In Count One, Cornerstone asserts, among other things, that Pilot and Edge waived any right to a lien on or interest in the molds in their possession by

signing the Bailment Agreements. Edge and Pilot oppose Cornerstone's motion. In their own motions for summary judgment, Edge and Pilot each ask for a judgment that they hold valid molder's liens under Ohio law.

With respect to the molder's lien issue, Pilot disputes the Plaintiffs' interpretation of the Bailment Agreements. Pilot also argues, among other things, that Cornerstone is equitably and judicially estopped from asserting that Pilot has waived its statutory molder's lien. In addition, Pilot asks for a summary judgment that: (1) it has not converted any of Cornerstone's property; (2) it holds a valid, secured claim against Cornerstone; and (3) it is entitled to attorneys fees and costs in its favor.

Similar to Pilot, Edge asks for a summary judgment that it has not converted any property of Cornerstone and that it holds a valid, secured claim against Cornerstone. Edge additionally requests a summary judgment that the allegedly preferential transfers Cornerstone seeks to recover from Edge in Count Nine of the Second Amended Complaint were contemporaneous exchanges for new value within the meaning of 11 U.S.C. §547(c)(1). In the Reconsideration Motion, Edge (1) seeks to vacate this Court's prior order denying Edge leave to amend its answer to add the 11 U.S.C. §547(c)(1) defense; (2) requests authority to amend its answer to add the new value defense under 11 U.S.C. §547(c)(4); and (3) requests a continuance of the upcoming trial.

### A. The Molder's Lien Claims (Count One)

The Ohio Revised Code provides that a molder has a lien on a die, mold, pattern, or form that is in his possession and that belongs to a customer for the work performed with the die, mold pattern or form. *See* OHIO REV. CODE §1333.31(A)(1). The molder can retain possession of the die, mold or pattern until paid. *See* OHIO REV. CODE

§1333.31(A)(2). A molder's lien arises automatically and is perfected by possession. *See In re Flue Gas Resources,* 77 B.R. 628 (Bankr. N.D. Ohio 1987); *International Extrusions, Inc. v. PM Sec. Rolling,* 1995 WL 546924 (Ohio App. -- 8 Dist., 1995) (unpublished) (citing *International Extrusions*).

Here, there is no dispute that Pilot and Edge are "molders" within the meaning of the relevant sections of the Ohio Revised Code. There also is no dispute that Edge and Pilot are in possession of certain molds belonging to Cornerstone. While the parties dispute the amount of Edge and Pilot's pre-petition claims, there is no dispute that Pilot and Edge have not been paid in full for the work they performed for Cornerstone. However, the parties dispute whether Pilot and Edge waived any right to a molder's lien.

The Plaintiffs argue that Edge and Pilot clearly waived any right to assert a molder's lien under Ohio law by signing the Bailment Agreements. Edge and Pilot argue that the Bailment Agreements do not contain an express waiver of any statutory right under Ohio law. Edge and Pilot further argue that the Bailment Agreements were merely one part of the parties' respective "manufacturing agreements," which Cornerstone breached by failing to pay Pilot and Edge for their work. [2]

Under Ohio law, the construction of contracts is a matter of law. *Alexander v. Buckeye Pipe Line Co.,* 374 N.E.2d 146 (Ohio 1978). When construing a contract, a court's principle objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 714 N.E.2d 898 (Ohio 1999). "The

---

[2] In footnote 11 of the Pilot Motion, Pilot states that Ohio law should apply to the parties' contract dispute. In the Edge Motion, Edge cites Ohio case law to support its argument regarding the proper interpretation of its Bailment Agreement with Cornerstone. It is not clear from the Cornerstone Motion (which cites very little case law) or from Cornerstone's responses to the Edge Motion and the Pilot Motion whether Cornerstone disputes that Ohio law applies to the parties' contract claims. As discussed in this Memorandum Opinion, Texas and Ohio courts appear to have adopted substantially identical standards for the interpretation of written contracts. Likewise, a plaintiff suing for conversion by a bailee must establish the same elements in order to succeed on its claim under either Ohio or Texas law.

<u>**MEMORANDUM OPINION AND ORDER**</u> **–Page 9**

intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Medical Life Ins. Co.,* 509 N.E.2d 411 (Ohio 1987). A court will only consider extrinsic evidence in an effort to give effect to the parties' intentions if the language of a contract is ambiguous. *Shifrin v. Forest City Ent., Inc.*, 597 N.E.2d 499 (Ohio 1992). Contract language is ambiguous where its meaning cannot be determined from the four corners of the contract or where the language is susceptible to two or more conflicting, but reasonable interpretations. *Covington v. Lucia,* 784 N.E.2d 186 (Ohio 2003).

Likewise, under Texas law, if express wording in the contract is subject to two or more reasonable interpretations, the contract is ambiguous. *See, e.g., Fox v. Parker,* 98 S.W.3d 713, 719 (Tex.App.-Waco 2003, pet. denied). If a court finds a contract ambiguous, the court must determine the true intentions of the parties to resolve the ambiguity. *Id.* This determination involves fact issues, and extrinsic evidence may be introduced to discern the parties' intent. *Id.* at 719-20.

In this case, the disputed language in the Bailment Agreements (quoted *supra*) is subject to more than one reasonable interpretation. In short, the Bailment Agreements are ambiguous with respect to whether Edge and Pilot waived their respective right to assert a statutory molder's lien, and the proper interpretation of the Bailment Agreements is a disputed issue of material fact. The Court, therefore, concludes that none of the parties have established that they are entitled to judgment as a matter of law on whether Pilot and Edge waived their right to assert molder's liens by executing the Bailment Agreements.

Pilot's estoppel arguments also cannot succeed as a matter of law. In support of equitable estoppel, Pilot asserts that Cornerstone made false and misleading representations to Pilot regarding its intention of paying past-due accounts. Based on Cornerstone's alleged false and misleading representations, Pilot argues that the Plaintiffs should be equitably estopped from denying the existence of its molder's lien. In response, the Plaintiffs have submitted evidence, including affidavits, contradicting Pilot's assertions. Genuine issues of material fact exist regarding, among other things, whether any representative of Cornerstone made false statements to Pilot with actual or constructive knowledge of their falsity.

In support of its argument for judicial estoppel, Pilot relies on a settlement agreement between Cornerstone and Bloom Industries, Inc. ("Bloom"). Pilot asserts that, as part of the settlement agreement, Cornerstone agreed and acknowledged that Bloom held a valid statutory molder's lien under Ohio law. Pilot argues that the Plaintiffs should not be allowed to argue that Pilot does not hold a valid molder's lien under Ohio law when Cornerstone has previously admitted to the validity of the statutory lien of another molder. However, judicial estoppel generally does not apply unless the issues are identical and a party has been successful in persuading a court to accept its position. *See, e.g., Moore v. United Services Auto. Ass'n,* 808 F.2d 1147, 1154 n.6 (5th Cir. 1987) (citing *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 (6th Cir.1982)). A settlement ordinarily does not constitute judicial acceptance of whatever terms it contains, or of a litigant's assertions. *Edwards*, 590 F.2d at 599. *See also, e.g., Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1077 n. 9 (5th Cir. 1997) (judicial estoppel inapplicable

**MEMORANDUM OPINION AND ORDER** –Page 11

where the record did not show that allegations in settlement agreement were accepted as true by the court).

### B. Priority of Molder's Liens (Count 2) and Pilot's Counterclaim against REI

In Count Two of the Plaintiffs' Second Amended Complaint, the Plaintiffs assert that the claims of Cornerstone's secured lenders, First United Bank & Trust Company ("FUB") and Rural Enterprises, Inc. ("Rural"), have priority over the molder's lien claims asserted by Edge and Pilot. In the Pilot Motion, Pilot requests summary judgment on Count Two. Pilot asserts in its statement of facts that any interest of FUB in the molds held by Pilot is junior to Pilot's statutory lien under Ohio law. With respect to Rural, Pilot argues in footnote 10 of the Pilot Motion that it has priority over any lien asserted by REI in Cornerstone's molds.

As discussed *supra*, Pilot has failed to establish that no genuine issue of material fact exists or that it is entitled to judgment as a matter of law on its claim for a statutory lien pursuant to §1333.31 of the Ohio Revised Code. The existence of a valid statutory lien is a threshold issue that must be decided prior to a determination of priority. Accordingly, Pilot has failed to establish that no genuine issue of material fact exists or that it is entitled to judgment as a matter of law on Count Two of the Plaintiffs' Second Amended Complaint or on its counterclaim against Rural.

### C. Conversion and Turnover (Counts Eleven, Twelve and Thirteen)

Under Ohio law, for a bailor to recover against a bailee, he must establish a contract of bailment, delivery of the bailed property to the bailee, and a failure of the bailee to redeliver the property. *David v. Lose*, 218 N.E.2d 442 (Ohio 1966). "[W]rongful intent is not essential, it being sufficient if the owner has been deprived of

his property by the act of another assuming an unauthorized control over it." *Aetna Casualty & Surety Co. v. Higbee Co.*, 76 N.E.2d 404 (Ohio App. 1947). Likewise, under Texas law, to establish a claim for conversion of personal property against a bailee, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Whitaker v. Bank of El Paso,* 850 S.W.2d 757, 760 (Tex.App.-El Paso 1993, no writ). Wrongful intent is not an element of conversion under Texas law. *Thomas v. McNair,* 882 S.W.2d 870, 884 (Tex.App.-Corpus Christi 1994, no writ).

Here, the parties have offered competing evidence regarding, among other things, the volume of inventory and resin supplied by Cornerstone and how the inventory and resin has been used by Pilot and Edge. Pilot and Edge have failed to establish that no genuine issue of material fact exists or that they are entitled to judgment as a matter of law on Cornerstone's claims for conversion and turnover. Issues of material fact exist regarding, among other things, whether Pilot and Edge have a right to hold Cornerstone's molds and whether Pilot and Edge, as bailees under the Bailment Agreements, have converted any inventory or resin supplied by Cornerstone.

### D. Objections to Claims (Counts Six and Seven)

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim. FED. R. BANKR. P. 3001(f); *Matter of Fidelity Holding Co.,* Ltd., 837 F.2d

MEMORANDUM OPINION AND ORDER –Page 13

696 (5th Cir. 1988). Bankruptcy Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c). Likewise, if a creditor claims a security interest in property of the debtor, Bankruptcy Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

The burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Bankruptcy Rule 3001 by alleging facts in the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objecting party meets this evidentiary requirement, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

Here, Pilot and Edge filed timely claims against Cornerstone. However, the parties have submitted conflicting evidence regarding the amounts of Pilot and Edge's pre-petition claims against Cornerstone and, as discussed *supra*, genuine issues of material fact exist regarding whether Edge and Pilot hold valid statutory liens under Ohio law. Under the circumstances, Pilot and Edge have failed to establish that no genuine

issue of material fact exist or that they are entitled to judgment as a matter of law with respect to the amounts and allegedly secured nature of their claims.

### E. Avoidance of Preferential Transfers to Edge (Count Nine)

Edge filed the Reconsideration Motion within ten days of the entry of the order denying its motion to amend its answer to the Second Amended Complaint. However, Edge does not assert grounds for relief under Federal Rule of Civil Procedure 59(e), as adopted and applied to adversary proceedings by Federal Rule of Bankruptcy Procedure 9023 (*i.e.*, that the Court should vacate or reconsider its order because there has been an intervening change in controlling law, new evidence has become available, or in order to prevent a manifest injustice due to a clear error of law or fact). Rather, Edge argues – as it argued at the hearing on November 28, 2006 – that its failure to include the contemporaneous exchange for new value defense in its answer to the Second Amended Complaint was due to an inadvertent mistake by counsel. Edge seeks relief from the Court's order denying its request to amend its answer pursuant to Federal Rule of Civil Procedure 60(b) based on the alleged inadvertent mistake of its attorney. Edge's Reconsideration Motion also includes a request to amend its answer to include yet another affirmative defense – the new value defense under 11 U.S.C. §547(c)(4) of the Bankruptcy Code.

Edge correctly notes that Federal Rule of Civil Procedure 15(a), as adopted and applied to this adversary proceeding by Bankruptcy Rule 7015, "evinces a bias in favor of granting leave to amend." *S. Constructors Group, Inc. v. Dynalectric Co.,* 2 F.3d 606, 611 (5th Cir.1993); *Little v. Liquid Air Corp.,* 952 F.2d 841, 846 (5th Cir.1992). However, the Fifth Circuit has also stated that leave to amend under Federal Rule 15(a) is

by no means automatic. *S. Constructors,* 2 F.3d at 612. For example, the Fifth Circuit has upheld the denial of leave to amend when the moving party engaged in undue delay, *Little,* 952 F.2d at 846, or attempted to present theories of recovery *seriatim* to the district court. *S. Constructors,* 2 F.3d at 612. Additionally, the U.S. Supreme Court has sanctioned bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment as plausible reasons for a court to deny a party's request for leave to amend. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

In this case, Cornerstone amended its Complaint to assert an 11 U.S.C. §547(b) avoidance claim against Edge in February 2006. Edge's answer to the Cornerstone's First Amended Complaint failed to include any of the affirmative defenses set forth in 11 U.S.C. §547(c). Edge's answer to the Second Amended Complaint also failed to include any of the affirmative defenses set forth in 11 U.S.C. §547(c). Edge waited until a few weeks before trial before seeking to amend its answer in order to assert a contemporaneous exchange for new value defense under 11 U.S.C. §547(c)(1). Edge admitted at the hearing on November 28, 2006, that it would offer expert opinion testimony regarding industry standards, among other things.

Edge's explanation of the delay in seeking to amend its complaint – namely, its counsel's misunderstanding of bankruptcy law and the affirmative nature of the defenses set forth in 11 U.S.C. §547(c) – is unsatisfactory. It is well settled that the defenses set forth in 11 U.S.C. §547(c) are affirmative defenses. *See, e.g., In re Ramba, Inc.,* 416 F.3d 394, 400 (5th Cir. 2005); *In re Arrow Air, Inc.,* 940 F.2d 1463, 1466 (11th Cir.

1991). Further, ignorance of the law is generally not a satisfactory explanation for purposes of Federal Rule 15(a). *See, e.g., Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2nd Cir. 1990).

The Plaintiffs would be unduly prejudiced by allowing Edge to amend its answer to the Second Amended Complaint on the eve of trial. Edge has already amended its answer to the Plaintiffs' claims, including the Plaintiffs' avoidance claim. The new affirmative defenses that Edge now seeks to assert would require the Plaintiffs to expend significant additional resources to conduct discovery and prepare for trial, including costs associated with obtaining their own expert to consult or testify regarding industry standards, to the extent relevant. Further, Edge's new defenses would significantly delay the resolution of the parties' dispute. If the trial of this case is continued, as Edge requests, the new trial date is likely to be a year from now due to the estimated length of the trial and this Court's congested trial docket. *See, e.g., Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir. 1993).

For the foregoing reasons, the Court concludes that Edge's Reconsideration Motion should be denied to the extent it requests leave to amend its answer to the Plaintiffs' Second Amended Complaint pursuant to Federal Rule 15(a). Edge's Reconsideration Motion also should be denied to the extent it requests relief from this Court's November 30th order denying its prior motion to amend pursuant to Federal Rule 60(b)(1). It is well-established that "'inadvertent mistake'[,] ... [g]ross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief...." *Pettle v. Bickham (In re Pettle)*, 410 F.3d 189, 192 (5th Cir. 2005) (quoting *Edward H. Bohlin Co. v. Banning,* 6 F.3d 350, 356-57 (5th Cir. 1993)).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Edge Motion shall be, and it is hereby, **DENIED**; it is further

**ORDERED** that the Pilot Motion shall be, and it is hereby, **DENIED**; it is further

**ORDERED** that the Plaintiffs' Motion shall be, and it is hereby, **DENIED**; and it is further

**ORDERED** that Edge's Reconsideration Motion shall be, and it is hereby, **DENIED**.

Signed on 12/13/2006

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE